IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JASON WARD**                                                                             **PLAINTIFF**

v.                                                             **CAUSE NO. 1:17CV331-LG-RHW**

**AETNA LIFE INSURANCE
COMPANY**                                                                   **DEFENDANT**

**MEMORANDUM OPINION AND ORDER CONCERNING
THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** are the [21] Motion for Summary Judgment filed by the defendant, Aetna Life Insurance Company, and the [23] Motion for Summary Judgment filed by the plaintiff, Jason Ward, in this lawsuit concerning the denial of long-term disability benefits under a plan governed by ERISA. The parties fully briefed Aetna's Motion, but Ward did not file a reply in support of his Motion. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that Aetna's Motion should be granted, and Ward's Motion should be denied.

## BACKGROUND

Aetna issued a group plan (policy number GP-737331-GID) that provided long-term disability insurance to eligible employees of Pacific Architects and Engineers Incorporated (hereafter "PAE") effective January 1, 2015. (Admin. R. 91, ECF No. 14-1.) The plan's booklet-certificate[1] notifies employees that they must enroll in the long-term disability plan within thirty-one days of their eligibility date. (*Id.* at 95.) Employees who do not enroll within thirty-one days of eligibility are

---
[1] The booklet-certificate states that it is part of the plan. (Administrative R. 90, 92, ECF No. 14.) Ward admits that he received the booklet-certificate. (Pl.'s Mem. 9 n.4, ECF No. 24.)

required to submit evidence of good health satisfactory to Aetna at their own expense to obtain coverage.  (*Id*.)  The plan grants Aetna discretion to determine whether an employee's claim for benefits should be granted, and Aetna is responsible for paying any valid claims.

Jason Ward was diagnosed with renal cell carcinoma in November 2012 and underwent a right robotic nephrectomy on December 26, 2012.  (Administrative R. 786, ECF No. 14.)  On December 15, 2014, PAE hired Ward to work as an electrical engineer.  (*Id*. at 1841.)  Ward became eligible for long-term disability coverage when he was hired, but he did not enroll in the long-term disability plan within thirty-one days of eligibility.  (*Id*. at 449.)  An August 18, 2015 CT-scan revealed a nodule on Ward's right lung.  (*Id*. at 786.)  Ward's physicians recommended a six-month follow-up CT-scan.  (*Id*.)  Ward attempted to enroll in the long-term disability plan for the plan period beginning January 1, 2016.  (*Id*. at 449.)  On February 19, 2016, Ward's follow-up CT-scan revealed that Ward had an additional nodule on his right lung, so Ward traveled to M.D. Anderson for treatment recommendations.  (*Id*. at 786.)  At M.D. Anderson, physicians diagnosed Ward with metastatic renal cell carcinoma; thus, his physicians had determined that the cancer had spread from his kidney to his lung.  (*Id*. at 803-04.)

On March 17, 2016, Ward filed a claim with Aetna for short-term disability, which was ultimately granted.  (*Id*. at 121, 211.)  Ward then sought long-term disability benefits, but Aetna denied Ward's claim because he did not submit an evidence of insurability form demonstrating good health when he enrolled in the long-term disability insurance plan.  (*Id*. at 291.)  Ward appealed the denial of his

claim, asserting that he was told in writing that he had coverage. He also noted that long-term disability insurance premiums had been deducted from his paychecks.[2] (*Id.* at 1759.) Aetna denied Ward's appeal, and he filed this lawsuit asserting claims for equitable relief pursuant to 29 U.S.C. § 1132(a)(3) and long-term disability benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). The parties have filed cross-motions for summary judgment.

## DISCUSSION

### I. STANDARD OF REVIEW

"[W]hen an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." *White v. Life Ins. Co. of N. Am.*, 892 F.3d 762, 767 (5th Cir. 2018) (quoting *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., LLC*, 878 F.3d 478, 483 (5th Cir. 2017)). "If the plan administrator's interpretation is legally correct, then no abuse of discretion has occurred, and the analysis ends." *Owens v. W. & S. Life Ins. Co.*, 717 F. App'x 412, 416 (5th Cir. 2018). However, if the plan interpretation is "not legally sound, we then move on to step two and determine whether the interpretation itself constitutes an abuse of discretion." *Id.* "Only upon reaching this second step must the court weigh as a factor whether the administrator operated under a conflict of interest." *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009); *see also Gomez v. Ericsson, Inc.*, 828 F.3d 367, 374 n.5 (5th Cir. 2016). A court must "give deference to the decision of the plan

---

[2] Ward concedes that Aetna instructed him to seek reimbursement of the premiums from PAE after it denied his claim. (Pl.'s Mem. 4, ECF No. 24.)

administrator and may not substitute its judgment for the decision of the fiduciary." *Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 307 (5th Cir. 2015) (citing 1A Couch on Ins. § 7:59 (3d ed. 2014)).

## II. WHETHER AETNA'S PLAN INTERPRETATION IS LEGALLY CORRECT

"In determining whether an ERISA determination is legally correct, we consider: '(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan.'" *Gomez*, 828 F.3d at 373-74 (quoting *Stone*, 570 F.3d at 258). Ward has not argued that Aetna failed to give the plan a uniform construction or that there are any unanticipated costs resulting from the differing plan interpretations, so it is not necessary to discuss the first and third factors. Therefore, the Court must only address whether Aetna's interpretation of the plan is consistent with a fair reading of the plan.

"Eligibility for benefits under any ERISA plan is governed in the first instance by the plain meaning of the plan language." *Acosta v. Bank of La.*, 88 F. App'x 688, 690 (5th Cir. 2004) (citing *Threadgill v. Prudential Secs. Grp., Inc.*, 145 F.3d 286, 292 (5th Cir. 1998)). Thus, "[w]hen interpreting plan provisions, we interpret the contract language in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning if there is one." *White v. St. Luke's Episcopal Health Sys.*, 317 F. App'x 390, 393 (5th Cir. 2009).

Under the heading "How and When to Enroll," the plan's booklet-certificate provides:

> **Enrollment**
> You will be provided with plan benefit and enrollment information when you first become eligible to enroll. You will need to enroll in a manner determined by **Aetna** and your employer. To complete the enrollment process, you will need to provide all requested information including any evidence of good health. You will also need to agree to make required contributions for any contributory coverage. Your employer will determine the amount of your plan contributions, and will advise you of the required amount. Your contributions will be deducted from your pay. Remember plan contributions are subject to change.
> You will need to enroll within 31 days of your eligibility date.
>
> **Evidence of Good Health** (GR-9N-29-015-03)
> You must provide evidence of good health that is satisfactory to **Aetna** if:
> - You request to enroll more than 31 days after your eligibility date.
> - You request to reinstate coverage that ended because you voluntarily stopped your coverage or you did not make the required contributions.
>
> If you are required to submit evidence of good health, you must furnish all such evidence at your own expense.

(Administrative R. 96, ECF No. 14). The parties do not dispute that: (1) Ward asked to enroll in the plan more than thirty-one days after his eligibility date, and (2) Ward did not attempt to provide evidence of good health. However, Ward argues that the Enrollment and Evidence of Good Health provisions in the booklet-certificate are ambiguous and that the ambiguous provisions should be interpreted in favor of Ward pursuant to the doctrine of contra proferentum.

"[W]hen a plan administrator is given broad discretion to interpret a plan, it has the power to resolve ambiguities." *Porter v. Lowe's Cos., Inc.'s Bus. Travel Acc.*

-5-

*Ins. Plan*, 731 F.3d 360, 365 (5th Cir. 2013). Therefore, the doctrine of contra proferentum does not apply in the present case. Furthermore, even if the doctrine of contra proferentum applied, the Enrollment and Evidence of Good Health provisions plainly and unambiguously provide that employees who enroll in the long-term disability plan are required to provide evidence of good health to obtain coverage. Therefore, Aetna's plan interpretation is legally correct.

### III. AETNA'S CONFLICT OF INTEREST

The parties do not dispute that Aetna has a structural conflict of interest, because it makes benefits determinations and funds the benefit plan. Ward argues that Aetna's conflict of interest should weigh heavily in the Court's consideration, because he contends that Aetna's decision was procedurally unreasonable. According to Ward, claim notes indicate that PAE and Aetna employees were themselves unsure about the applicability of the Evidence of Good Health provision in the plan and one Aetna employee referred to the decision to deny him coverage as a business decision. As explained previously, it is not necessary to consider the effect of a conflict of interest, because Aetna's plan interpretation was legally correct. *See Stone*, 570 F.3d at 257.

Even if Aetna's conflict were a factor to consider in the present case, there is no indication that Aetna's decision was procedurally unreasonable. To determine whether a plan administrator's decision is procedurally unreasonable, courts consider "whether the method by which [the plan administrator] made the decision was unreasonable." *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 469-71 (5th Cir. 2010). Examples of procedural unreasonableness include: (1) an

insurer's failure to address the Social Security Administration's (SSA) determination that the plaintiff was disabled, *Id.* at 471; (2) an insurer's decision to ignore an SSA finding even though it asked the plaintiff to file a SSA petition, *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 118 (2008); and (3) an insurer's failure to consider a doctor's report that was contrary to its decision, *White*, 892 F.3d at 768. In the present case, Aetna used a reasonable method of decision-making because it merely applied the undisputed facts to the clear plan language.

## IV.  WAIVER AND ESTOPPEL

Ward argues that he is entitled to coverage because Aetna misrepresented that he had long-term disability coverage in a May 18, 2017 Benefit Summary. He also argues that premiums were deducted from his paychecks for long-term disability coverage and that he was not informed that he did not have coverage until after he filed a claim.

Fifth Circuit "caselaw defines waiver as 'a voluntary or intentional relinquishment of a known right.'" *High v. E-Sys. Inc.*, 459 F.3d 573, 581 (5th Cir. 2006) (quoting *Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir.1991)). Courts view waiver claims as legal questions that stem from the common law rather than ERISA; thus, courts are permitted to consider evidence outside the administrative record when considering waiver claims. *Hargis v. Idacorp Energy L.P.*, No. H-04-1692, 2005 WL 6456898, at *7 (S.D. Tex. Oct. 26, 2005); *see also Pitts*, 931 F.2d at 357 (applying common law to address ERISA waiver claim). Ward is asserting that Aetna waived its right to deny coverage by accepting

premiums and by failing to notify him that coverage was not in effect. Aetna's employee Danielle M. Spears has provided the following testimony via affidavit:

> 2. During the relevant time period, Aetna employed an aggregate billing method with respect to collecting group premiums for PAE's account on long-term disability ("LTD") coverage under Group Policy No. GP-737331 (the "Policy").
> 3. Under the aggregate billing method, Aetna sends an invoice to PAE for all of the covered employees to be paid in one lump sum. The invoice does not include a list of each insured employee and the amounts due per individual.
> 4. The amount of each invoice is based on the last payment received and processed through the billing system, or, for the first invoice, based on either a census provided at the time of the sale, or based upon information in the underwriting proposal at the time of sale. The employer could revise the invoice to change the number of employees covered.
> 5. With this billing method, the employer provides a summary of the number of lives and volume by coverages ("summary data"). During the 2016 Plan year, PAE provided summary data to Aetna without providing information at the individual employee level. As a result, Aetna did not know what amount in premiums was being paid for which employee. Moreover, under this billing method or otherwise, Aetna does not independently validate eligibility or enrollment for individual employees. Rather, this information is maintained by the policyholder.

(Def.'s Mot., Ex. B, ECF No. 21-2.) Furthermore, the plan language provides that PAE was responsible for enrollment and collection of premiums, and the claim notes reveal that, after Ward submitted his claim, Aetna contacted PAE to obtain information regarding Ward's attempted enrollment in the plan. (*See* Administrative R. 77, 444-50.) Since Aetna was unaware that Ward had attempted to enroll in the plan, that PAE was deducting premiums from his paychecks, and that Ward had not submitted evidence of good health, Aetna did not intentionally and voluntarily waive its right to deny coverage. *See Hargis*, 2005 WL 6456898, at *7 (holding that an insurer could not have acted intentionally where it had no

-8-

knowledge that it was accepting premiums from the plaintiff). As a result, Ward's waiver claim is without merit.

As for estoppel, the Fifth Circuit has explained, "To establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444-45 (5th Cir. 2005). A "party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party." *High*, 459 F.3d at 580 (quoting *Sprague v. GMC*, 133 F.3d 388, 404 (6th Cir. 1998)).

Ward appears to assert that Aetna should be estopped from denying coverage because it represented that he had enrolled in the long-term disability insurance plan in a May 18, 2017 Benefit Summary. However, the Benefit Summary contains information concerning Ward's coverage elections for numerous types of employee benefits, including insurance benefits provided by insurers unaffiliated with Aetna, and information on the Summary indicates that it was prepared by an entity called Businesssolver, Inc., not Aetna. Thus, even if the statements in the Summary could be considered misrepresentations, the Summary was not prepared by Aetna and the misrepresentations were not made by Aetna. (Administrative R. 1788-89, ECF No. 14-1.) In addition, the Benefit Summary states:

> This entire benefit summary is reflective of benefits information contained within the Businessolver, Inc. database on the date this information is being displayed. This information is not intended to be

> an all[-]inclusive or exhaustive list of benefit information. Modifications, deletions, and additions to coverage are not immediately effective upon submission. Please contact your Benefits Administrator with questions.

(*Id.* at 1790.) Due to this disclaimer, Ward's reliance on the statements in the Summary was not reasonable. Finally, Ward's reliance was unreasonable because it was not consistent with the plain, unambiguous language of the plan. As a result, Ward's estoppel claim is also without merit.

## V. BREACH OF FIDUCIARY DUTY

Ward has attempted to file a claim pursuant to 29 U.S.C. § 1132(a)(3), by asserting that Aetna breached its fiduciary duty "by not informing him of all its policy provisions." (Pl.'s Mem. 17, ECF No. 24.) Because Aetna's denial of coverage letters referenced an evidence of insurability form and neither Aetna nor PAE gave Ward the form, he claims that Aetna breached its fiduciary duty to notify him of the plan's requirements.

The Fifth Circuit has held that claimants cannot simultaneously pursue claims for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3). *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 733 (5th Cir. 2018). Therefore, when a claimant has an adequate mechanism for obtaining monetary relief under § 1132(a)(1)(B), the claimant's § 1132(a)(3) claim must be dismissed even when the claimant does not prevail on his § 1132(a)(1)(B) claim. *Id.*

Ward's breach of fiduciary duty claim is duplicative of his § 1132(a)(1)(B) claim, because both causes of action are claims for monetary benefits under the

plan. Therefore, Ward's breach of fiduciary duty claim must be dismissed. Nevertheless, even if Ward's fiduciary duty claim could proceed to the merits, the claim must be denied because Aetna clearly informed Ward through the plan language that evidence of good health was required. Ward's assertion that it was unclear what type of evidence of good health would have been enough — whether a completed evidence of insurability form or otherwise — does not support his claim because Ward admits that he did not attempt to provide any evidence of good health. *See Blum v. Spectrum Restaurant Grp.*, 261 F. Supp. 2d 697, 712 (E.D. Tex. 2003) (holding that there is no need to determine what constitutes "evidence of good health" where the claimant did not attempt to provide evidence of good health). Furthermore, the plan provides that PAE, not Aetna, was responsible for gathering the information Aetna needed to enroll employees. (Administrative R. 77, ECF No. 14.) Therefore, Ward's breach of fiduciary duty claim must be dismissed.

## CONCLUSION

The Court has considered all the parties' arguments. Those not specifically addressed would not have changed the outcome. Although the Court is sympathetic to Ward's circumstances and is disappointed in the way his attempted plan enrollment was handled, the Court cannot grant relief that is unavailable under the plan and ERISA.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the [21] Motion for Summary Judgment filed by the defendant, Aetna Life Insurance Company, is **GRANTED** and the [23] Motion for Summary Judgment filed by the plaintiff,

Jason Ward, is **DENIED**. The claims Jason Ward filed against Aetna are hereby **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 20th day of December, 2018.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE